UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 13-50154-01-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING MOTION |
| | ) | TO SUPPRESS |
| RAUL MUNOZ-ESCALANTE, | ) | |
| | ) | |
| Defendant. | ) | |

**NATURE AND PROCEDURE OF THE CASE**

Defendant, Raul Munoz-Escalante, is charged with Conspiracy to Harbor, Encourage, and Induce Aliens to Reside in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and Harboring, Encouraging, and Inducing Aliens to Reside in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(II). The government seized two of Munoz-Escalante's assets, namely a 1999 Oldenberg Lack Shore Timberline crawler delimber model SDL2a serial number 153 (delimber) and a CAT 525B Skidder, serial number CAT0525BH3KZ00731 (skidder), and initiated forfeiture proceedings against the same. Munoz-Escalante moves to suppress statements he made during an interview with a United States Forest Service (USFS) agent and the seizures of his equipment. The motion was referred to United States Magistrate Judge John Simko for a report and recommendation.

A hearing on Munoz-Escalante's motion to suppress was held before Magistrate Judge Simko on March 17, 2014. USFS Agent Samuel Sidders and USFS Special Agent Travis Lunders testified at the hearing. Although no exhibits were received into evidence during the hearing, two exhibits were attached to Munoz-Escalante's brief and three exhibits were attached to the government's supplemental brief. Based upon the testimony and exhibits attached to the briefs, Magistrate Judge Simko issued a report and recommendation recommending that Munoz-Escalante's motion to suppress be denied because the interview with the USFS agent was voluntary and noncustodial and the equipment was subject to warrantless seizure. Munoz-Escalante objects to the report and recommendation, arguing that the interview was custodial and involuntary and that the warrantless seizure was unlawful. For the following reasons, the court adopts the report and recommendation of Magistrate Judge Simko and denies Munoz-Escalante's motion to suppress.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), the court should make a de novo review "of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." *Accord United States v. Benitez*, 244 F. App'x 64, 66 (8th Cir. 2007) ("If a party objects to the magistrate judge's report and recommendation with respect to a dispositive matter, the district court judge must conduct a *de novo* review of the disputed portion of the magistrate judge's report and

recommendation."). Similarly, Federal Rule of Criminal Procedure 59 classifies a motion to suppress evidence as a dispositive motion that requires de novo review. Fed. R. Crim. P. 59(b)(1), (3). De novo review in the context of reviewing a magistrate judge's report and recommendation does not require a new evidentiary hearing and only means a district court "give[s] fresh consideration to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980) (internal quotations and citations omitted). The court has conducted a de novo review.

## FACTS

The pertinent facts are as follows:

In the fall of 2012, Munoz-Escalante was a subject of an investigation conducted, in part, by the USFS. Munoz-Escalante was involved in a logging operation that contracted with the USFS to provide logging services in the Black Hills National Forest.

On September 27, 2012, USFS Agents Sidders and Craig Perry, along with other agents from state and federal agencies, conducted surveillance on a logging worksite in the Black Hills National Forest. During this surveillance, agents observed Munoz-Escalante and Juan Estrada arrive at the worksite and start and operate the

delimber and skidder. Following a period of surveillance, Agents Sidders and Perry[1] approached the worksite to conduct a contract compliance check.[2] When the agents arrived on the worksite, both Munoz-Escalante and Estrada were riding in the delimber. Upon seeing the agents, Munoz-Escalante and Estrada stepped out of the delimber, and the agents indicated that they were performing a worksite safety check in accordance with the USFS contract.

The agents used a standard, premade form to interview Munoz-Escalante and Estrada.[3] Agent Sidders asked Estrada who he worked for, the benefits he received, and various other questions to ensure compliance with the USFS contract. Estrada stated that he worked for Munoz Logging,[4] specifically indicating Munoz-Escalante was the person who paid him. Because the agents asked questions from a premade form, Munoz-Escalante was asked similar questions. The interview with Munoz-Escalante lasted roughly 15 minutes and was conversational in tone and amiable. At

---

[1] Agent Perry was wearing a full USFS uniform, including a badge and duty belt. Agent Sidders was wearing plain clothes, a safety vest, and helmet, and he had his credentials and a sidearm.

[2] As part of the terms of logging contracts with the USFS, companies agree to subject themselves to inspections regarding safety conditions, wage and payment of employees, and the conditions of the equipment that is used. These are often referred to as contract compliance checks.

[3] Agent Sidders interviewed Estrada, and Agent Perry interviewed Munoz-Escalante.

[4] Munoz-Escalante owns Munoz Logging.

4

no point did any of the agents unholster their weapons or raise their voices, and there was no indication Munoz-Escalante was having difficulty understanding the contents of the conversation even though English is his second language.

At some point after Agent Perry finished interviewing Munoz-Escalante, Agent Sidders and other agents[5] determined Estrada was in the United States illegally. Estrada was then placed under arrest. Munoz-Escalante, on the other hand, was never physically restrained or placed under arrest, and he was allowed to remain at the worksite after the agents left. The agents did not seize any equipment at that time, although Agent Perry did record the serial numbers of the delimber and skidder.

On September 28, 2012, USFS Special Agent Lunders placed a Notice to Seize on the delimber and skidder. The equipment was removed from the forest and shipped to a storage facility in Nebraska.

## DISCUSSION

### I. Suppression of Statements

Munoz-Escalante objects to the magistrate judge's conclusions that the interview that occurred on September 27, 2012, was noncustodial and voluntary.[6] If

---

[5] It seems the other agents approached the worksite some time after the interviews with Estrada and Munoz-Escalante began.

[6] Munoz-Escalante does not appear to object to any factual findings made in Magistrate Judge Simko's report and recommendation but rather the conclusions drawn by Magistrate Judge Simko.

the interview was custodial, the agents were required to advise Munoz-Escalante of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A failure to provide *Miranda* warnings to an individual in custody leads to suppression of any statements made by the individual in custody. *Id.* Along similar lines, statements made by an individual may be suppressed even if made during a noncustodial interview if the statements were not voluntary. *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976).

The first issue here is whether the September 27 interview was custodial. To determine whether an interrogation is custodial, courts "apply the six factor test set forth in *United States v. Griffin*, 922 F.2d 1343 (8th Cir. 1990)." *United States v. Holleman*, 743 F.3d 1152, 1159 (8th Cir. 2014). Those factors are:

1. Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the agents to do so, or that the suspect was not considered under arrest;

2. Whether the suspect possessed unrestrained freedom of movement during questioning;

3. Whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;

4. Whether strong arm tactics or deceptive stratagems were employed during questioning;

5. Whether the atmosphere of the questioning was police dominated; or

      6.      Whether the suspect was placed under arrest at the termination of the questioning.

*Griffin*, 922 F.2d at 1349. "The ultimate question is whether a reasonable person would feel free to leave under the totality of the circumstances, that is, 'whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.' " *Holleman*, 743 F.3d at 1159 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

After considering the totality of the circumstances, the court agrees with the magistrate judge's conclusion that the interview was noncustodial and incorporates his analysis here. *See* Docket 30 at 8-9. The facts which are most significant to this determination are:

      1.      The agents informed Munoz-Escalante that the purpose of the interview was to conduct a standard USFS contract compliance check. A standard compliance check falls fall short of a formal arrest, and a reasonable person in such a situation would not believe that he was under arrest.

      2.      The interview occurred in a national forest, which is public land.

      3.      Munoz-Escalante was not physically restrained at any time during the interview, and he failed to present evidence that his freedom of movement was ever restrained.

      4.      There is no evidence that strong arm tactics were employed during questioning,[7] and in fact, there is evidence that indicates that the interview, which lasted only about 15 minutes, was amiable and cooperative.

---

[7] The agents did not unholster their weapons at any point during the interview.

     5.     Munoz-Escalante was not arrested following his interview.[8]

For these reasons, along with the reasons set forth by Magistrate Judge Simko, the court finds the interview was noncustodial. Thus, *Miranda* warnings were not required.

     The second issue the court must consider is whether the statements made by Munoz-Escalante during the interview were voluntary. In considering whether statements were given voluntarily, "the determinative question is whether the [statements] were extracted by threats, violence, or promises (express or implied), such that the defendant's will was overborne and his or her capacity for self-determination was critically impaired." *United States v. Pierce*, 152 F.3d 808, 812 (8th Cir. 1998). Munoz-Escalante argues the statements were "involuntary due to the impediment presented by defendant's lack of fluency in the English language." Docket 31 at 2. But Munoz-Escalante has not identified specifically how his (in)ability to speak English caused his statements to be involuntary. There is no evidence that Munoz-Escalante's will was overborne or his capacity for self-determination was impaired. The fact that English is a second language to a person being interviewed by

---

[8] Munoz-Escalante notes that Estrada was arrested. According to the testimony presented during the hearing before the magistrate judge, however, Estrada's arrest occurred after Munoz-Escalante's interview was already completed. Thus, the fact that Estrada was later arrested is of little significance to whether Munoz-Escalante's interview was custodial.

police does not ipso facto cause any statements made by such person to be involuntary.

The court agrees with Magistrate Judge Simko's conclusions that Munoz-Escalante's September 27 interview was noncustodial, and his statements were made voluntarily. Thus, Munoz-Escalante's motion to suppress his statements made during the September 27 interview is denied.

## II.     Suppression of Seizures

Munoz-Escalante also objects to Magistrate Judge Simko's finding that there was probable cause to believe that the equipment in question was being used in the commission of a violation of 8 U.S.C. § 1324 and, therefore, no warrant was required. Under 8 U.S.C. § 1324(b)(1), "[a]ny conveyance, including any vessel, vehicle, or aircraft, that has been or is being used in the commission of a violation of subsection (a)[9] of this section . . . shall be seized and subject to forfeiture." Further, 8 U.S.C. § 1324(b)(2) provides that "[s]eizures and forfeitures under this subsection shall be governed by the provisions of chapter 46 of Title 18 relating to civil forfeitures, including section 981(d) of such title[.]" Chapter 46 of Title 18, therefore, sets out the procedures for seizing property.

---

[9] 8 U.S.C. § 1324(a) makes it unlawful for any person to harbor, encourage, or induce aliens to reside in the United States.

18 U.S.C. § 981(b)(2) details when warrantless seizures are allowed. Section 981(b)(2) notes that "a seizure may be made without a warrant if . . . there is probable cause to believe that the property is subject to forfeiture and—(i) the seizure is made pursuant to a lawful arrest or search; or (ii) another exception to the Fourth Amendment warrant requirement would apply[.]" Here, agents observed Munoz-Escalante and Estrada start and operate the skidder and delimber. Docket 19-1 at 2. The two individuals were both riding in the delimber when the agents made contact. *Id.* During Agent Sidders's interview with Estrada, Estrada indicated that he was employed by Munoz Logging, specifically indicating Munoz-Escalante as the person he worked for and who was responsible for paying him. Docket 32 at 20. The agents then determined that Estrada was in the United States illegally. The agents' observations and interviews were lawful because they took place in a national forest and were voluntary and noncustodial, i.e., it was a lawful search. Based on these facts, the seizure of the property in question was proper under the procedures set out in 18 U.S.C. § 981(b)(2) because the agents had probable cause to believe that the property was being used in the commission of a violation of 8 U.S.C. § 1324(a), and such property is therefore capable of being seized. *See* 8 U.S.C. § 1324(b). Thus, Munoz-Escalante's motion to suppress the seizure of his equipment is denied. Accordingly, it is

ORDERED that the report and recommendation of the magistrate judge (Docket 30) is adopted, and defendant's motion to suppress (Docket 19) is denied in its entirety.

Dated June 9, 2014.

>BY THE COURT:
>
>/s/ *Karen E. Schreier*
>KAREN E. SCHREIER
>UNITED STATES DISTRICT JUDGE